UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMIE WADE, PLAINTIFF

v. CIVIL ACTION NO. 3:08-CV-479-S

CAVALRY PORTFOLIO SERVICES LLC, DEFENDANT

## MEMORANDUM OPINION

Defendant Cavalry Portfolio Services LLC moves to amend its answer in this case arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. Plaintiff Jamie Wade objects to this amendment on various grounds. For the reasons that follow Wade's objections will be overruled and the amendment will be permitted.

Cavalry filed its initial answer on February 20, 2009. Little of substance took place in the case in the sixteen months before it moved to amend on June 20, 2010. Nonetheless more than 21 days passed, so amendment is permitted only with consent of the opposing party or of the court. Fed. R. Civ. P. 15(a)(2). Wade has refused consent, and thus the decision is for the court, which "should freely give leave when justice so requires." *Id.* The decision is ultimately entrusted to the court's discretion, which should take into account several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (*quoting Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

Obviously a substantial period of time passed between the filing of the original answer and the motion to amend. The court is not, however, of the opinion that this lag constitutes "undue delay." Cavalry offered its amendment for two primary purposes: First, to assert a number of affirmative defenses—notably res judicata—that it says have become available to it as a result of a state court judgment it obtained against Wade on January 22, 2010. Second, and more contentiously, Cavalry seeks to amend a number of the admissions and denials in its original answer. Specifically, the original answer admitted the facts contained following paragraphs of the complaint:

> 78.) That in the month of February 2007, CPS-LLC [Cavalry] made an inquiry into Wade's personal credit file through the Trans-Union credit reporting agency without having a permissible purpose;
> . . .
> 80.) That in the month of April 2007, CPS-LLC made an inquiry into Wade's personal credit file through the Trans-Union credit reporting agency without having a permissible purpose;
> . . .
> 82.) That in the month of April 2007, CPS-LLC made an inquiry into Wade's personal credit file through the Experian credit reporting agency without having a permissible purpose;
> . . .
> 84.) That in the month of July 2007, CPS-LLC made an inquiry into Wade's personal credit file through the Trans-Union credit reporting agency without having a permissible purpose;
> . . .
> 86.) That in the month of February 2007, when CPS-LLC made an inquiry into Wade's personal credit file through the Trans-Union credit reporting agency, without having a permissible purpose, it obtained Wade's personal information under false pretenses[.]

Cavalry avers that these admissions were inadvertent, and that it learned of its mistake only upon reading the plaintiff's scheduling conference statement, filed on June 16, 2010. If this is in fact the case, the amendment cannot be said to have been delayed at all: Cavalry filed it six days later. The court is inclined to believe the defendant's explanation, and thus to think that no undue delay occurred. The complaint is massive, complicated, and far more detailed than the typical pleading.

It is plausible that an attempt to discern and respond to all of its factual allegations might have gone awry. In addition, the "Fifth Affirmative Defense" asserted in the original answer actually takes the form of denying some of the factual allegations in the above-quoted paragraphs: "any inquire [sic] by Cavalry into Jamie Wade's credit was done so [sic] with a permissible purpose pursuant to the Fair Credit Reporting Act." The internal contradiction strongly suggests that Cavalry made a mistake somewhere in the answer, and given defendants' general preference for denying wrongdoing it makes sense to think the error was in the admission, not the denial.[1] It is equally plausible that the defense did not reread its answer after filing it, and that it thus did not have occasion to discover its mistake until the plaintiff pointed it out. Thus we think that there was no undue delay.

For similar reasons, the court concludes that the defendant has not acted in bad faith. From all it appears the original answer contained mistakes that the amendment corrects. Plaintiff does not point to any advantage that Cavalry obtained by initially admitting certain allegations only to deny them later, and no such advantage is obvious to the court. Ockham's razor[2] leads the court to believe that inadvertence, rather than some mysterious and convoluted attempt at gaining the upper hand, is the explanation for Cavalry's initial admissions and subsequent request to amend.

The "Fifth Affirmative Defense" provided notice to Wade and his counsel that Cavalry would or might dispute liability as to the allegations apparently admitted elsewhere in the answer. Plaintiff also complains that he had not previously been placed on notice of the possibility that Cavalry would assert res judicata. However, at the time of the initial answer the state-court decision upon which the

---

[1] It appears to the court that Cavalry may have intended to admit only to inquiring into Wade's credit, and not to having an impermissible purpose for doing so: this would make sense of the "Fifth Affirmative Defense."

[2] *See, e.g., Awkal v. Mitchell*, No. 01-4278, 2010 U.S. App. LEXIS 15148, at *64 (6th Cir. July 23, 2010) (en banc) (Martin, J., dissenting) ("At some point, Ockham's Razor must apply—the simplest answer is usually the correct one.")

defense will apparently rest had not been rendered, and thus Cavalry could not have raised it in the original pleading. And while perhaps Cavalry could have moved to amend its complaint so as to assert res judicata sooner than it did, Wade can hardly claim to have lacked notice of an adverse judgment specifically rendered against him in the state proceeding. By the same token, it cannot have been a surprise to have that judgment asserted against him here. *See* 28 U.S.C. § 1738.

The most likely basis on which to refuse to permit the amendment is the possible prejudice to Wade. There is obviously some disadvantage to him in allowing Cavalry to deny facts that it had previously admitted: now he will have to prove his case. But because (as explained above) the court is persuaded that the original admissions were mistakes, any prejudice to the plaintiff is not of a sort that would warrant a denial of leave to amend. The other plausible basis for finding prejudice is Wade's claim that he might have accepted (or at least responded differently to) Cavalry's earlier $2,000 settlement offer had he known that liability was disputed rather than admitted. But that offer is apparently still on the table (*see* Reply 4), so the court does not see any prejudice there either.

The final factor to be considered under *Wade* is futility, but the court is not of opinion that the amendment would be futile. The contested portions consist of denials of specific facts and the assertion of new defenses. The amendment is not futile at least inasmuch as it will require Wade to prove his case, and at this stage of the litigation the court lacks an evidentiary basis for finding that the newly asserted defenses are without merit.

Thus none of the *Wade* factors favors denying the amendment. The plaintiff raises two additional arguments which we will briefly address. First, he argues that Cavalry waived all affirmative defenses not raised all in the initial answer. *See* Fed. R. Civ. P. 8(c)(1); *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir.

1988). But as the Sixth Circuit has recognized, one reason for the rule allowing parties to amend is precisely to permit assertion of defenses omitted from the initial responsive pleading. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Accordingly the waiver argument holds no water.

Finally, Wade labels the contents of the original answer "judicial admissions" and argues that the defendant must show exceptional circumstances to retract them. However, the court of appeals has stated that "judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede . . . an alleged fact. . . . Considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases." *MacDonald v. GMC*, 110 F.3d 337, 340 (6th Cir. 1997) (*quoting United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)). For reasons expressed above the court is not of the opinion that the admissions in the original answer rise to the level of "deliberate voluntary waivers," and even if they did the court's belief that they arose from inadvertence rather than bad faith would lead us to relieve Cavalry of the consequences thereof. Accordingly the defendant is not bound by the statements in its initial answer.

The motion to amend will be granted by separate order.